IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AUG 15 2025

FILED

|  |  |  |
|---|---|---|
| CORNELL LYONS, | * | |
| Plaintiff, | * | |
| v. | * | CV 123-181 |
| CSX TRANSPORTATION, INC., | * | |
| Defendant. | * | |

# ORDER

Pending before the Court are Defendant's motion for summary judgment (Doc. 26) and Plaintiff's unopposed motion for extension of time (Doc. 28). For the following reasons, both motions are **GRANTED**.

## I. BACKGROUND

Defendant is a railroad transportation company that employs approximately 19,400 people. (Doc. 29-3, at 1.) On July 8, 2022, Plaintiff applied for a freight conductor position with Defendant in Augusta, Georgia. (Id. at 2.) Freight conductors direct the work of train crews and are responsible for the safe and efficient switching of railcars, facilitating loading and unloading, and the makeup and breakdown of trains. (Id.) They hold extremely safety-sensitive positions and must ensure compliance with all train orders, signals, rules, and safety regulations. (Id.) Many trains

weigh up to 30 million pounds and travel at speeds of up to seventy miles per hour. (Id.) The trains cross over roads and carry hazardous materials through residential, rural, and urban areas, and a conductor must therefore be constantly alert. (Id. at 3.) The freight conductor job description explains freight conductors must, among other things, "[m]aintain awareness of surrounding area and suspicious activity to ensure rail safety," be able to provide "clear instructions/directions," and demonstrate "problem solving and troubleshooting skills." (Id. at 3-4.) Defendant requires all freight conductor applicants to undergo a post-offer medical review process in which they submit to an examination performed by a third-party administrator, who then provides a report to Defendant. (Id. at 4.) Defendant's medical department reviews these reports and determines whether the candidate medically qualifies for the position. (Id.)

Plaintiff received an offer for the freight conductor position on August 9, 2022, and underwent a post-offer medical review examination on August 16, 2022. (Id. at 5.) Plaintiff's medical report (the "Report") was sent to Defendant's medical department. (Id.) The Report noted Plaintiff reported he had sleep apnea, anxiety or depressive disorders, post-traumatic stress disorder ("PTSD"), and diabetes or high blood sugar. (Id.) Plaintiff also reported he had a disability rating from the Department of Veteran's Affairs ("VA"). (Id.)

2

After reviewing the Report, Senior Nurse Case Manager Pamela Kessler, who worked in Defendant's medical department, asked Plaintiff to provide his VA disability rating and the breakdown of the different conditions. (Id.) Plaintiff sent Kessler the requested information, which showed he had a total combined VA disability rating of 100%. (Id. at 6.) The breakdown of his disability rating included a 70% disability rating for PTSD with associated memory loss, depression, and anxiety. (Id.) Plaintiff told Kessler his PTSD stemmed from witnessing the death of a friend while serving in Iraq. (Doc. 26-4, at 112.)

After reviewing Plaintiff's VA disability rating breakdown and the Code of Federal Regulations definition for a 70% PTSD rating, Kessler emailed Plaintiff, "With a 70 percent rating for PTSD and the trigger being witnessing the death of a friend[,] I am not sure this job is a good fit for you," given the fact that suicides and accidental deaths sometimes occur on railroads. (Id. at 118; Doc. 29, at 7.) Kessler also told Plaintiff that Defendant would reconsider him for the position if his condition changed and he chose to be reassessed by the VA. (Doc. 29-3, at 9.) Defendant notified Plaintiff soon after that his employment offer had been rescinded because he was medically unqualified. (Id. at 8; Doc. 26-4, at 164.) Plaintiff chose not to get reassessed by the VA because a lower rating would reduce his monthly disability payments from the VA. (Doc. 29-3, at 9.)

3

Plaintiff filed a charge of discrimination with the EEOC on January 23, 2023, and received a right to sue letter on September 26, 2023. (Doc. 26-4, at 166, 168.) Plaintiff initiated this action on November 30, 2023, alleging Defendant discriminated against him based on a disability in violation of Title I of the Americans with Disabilities Act of 1990 ("ADA"). (Doc. 1, at 1.) Defendant moved for summary judgment on September 9, 2024. (Doc. 26.) Before the deadline to respond expired, Plaintiff filed an unopposed motion for extension of time to respond due to pending litigation deadlines and medical procedures.[1] (Doc. 28, at 1-2.) Plaintiff then responded in opposition, and Defendant replied in support. (Docs. 29, 35.)

The Clerk of Court gave Plaintiff notice of the motion for summary judgment and informed him of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 27.) For that reason, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Defendant's motion is therefore ripe for the Court's review.

---

[1] Because Plaintiff has shown good cause for requesting the extension, the Court **GRANTS** Plaintiff's motion for extension of time (Doc. 28). Plaintiff's response (Doc. 29) is considered timely filed.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (citation omitted), and a dispute is genuine "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor," Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). The court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor," United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways: by negating an essential element of the non-movant's case or by showing that there is no evidence

5

to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Catrett, 477 U.S. 317). If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. at 608. The presence of any genuine issue of material fact renders summary judgment inappropriate. United States v. 5800 SW 74th Ave., 363 F.3d 1099, 1101 (11th Cir. 2004).

### III. DISCUSSION

"The ADA prohibits discrimination by an employer 'against a qualified individual on the basis of a disability' in any of the 'terms, conditions, or privileges of employment.'" Mazzeo v. Color Res. Int'l, LLC, 746 F.3d 1264, 1267 (11th Cir. 2014) (quoting 42 § U.S.C. 12112(a) (alterations adopted)). "In order to proceed under the ADA, the plaintiff must show that: (1) he had a disability; (2) he was a qualified individual; (3) the defendant took an adverse employment action against him; and (4) the defendant 'took that action because of' the plaintiff's disability." Leme v. S. Baptist Hosp. of Fla., Inc., 248 F. Supp. 3d 1319, 1337-38 (M.D. Fla. 2017) (citing Eleventh Circuit Civil Pattern Jury Instructions, Instruction No. 4.11 and Collado v.

6

United Parcel Serv., Co., 419 F.3d 1143, 1152 n.5 (11th Cir. 2005)).

Defendant asserts it is entitled to summary judgment because Plaintiff has no direct evidence of discrimination, cannot establish a prima facie case of discrimination with circumstantial evidence, is estopped from asserting an ADA claim by accepting VA disability payments, and cannot show its legitimate nondiscriminatory reason for rescinding his job offer was pretext for disability discrimination. (Doc. 26, at 1-2.) Plaintiff contends he has direct evidence of discrimination; even if his evidence is circumstantial, he can establish a prima facie case with evidence that Kessler "regarded him as" disabled; and Defendant's claimed nondiscriminatory reason for rescinding his offer is pretextual. (Doc. 29, at 2-4.) The Court, however, need not resolve the dispute about whether Plaintiff offers direct or circumstantial evidence of discrimination because it finds he has not shown a question of material fact exists as to whether he was a qualified individual. See Leme, 248 F. Supp. 3d at 1340 (finding question of direct versus circumstantial evidence irrelevant when ADA plaintiff failed to establish he was a qualified individual); Galloway v. Aletheia House, 509 F. App'x 912, 913-14 (11th Cir. 2013) (citation omitted) ("Assuming *arguendo* that Galloway presented direct evidence of discrimination, he nonetheless failed

7

to present evidence to establish an essential element of his case: that he was a qualified individual under the ADA.").

"An ADA plaintiff bears the burden of proving that [he] is a 'qualified individual with a disability' — that is, a person 'who, with or without reasonable accommodation, can perform the essential functions' of [the] job." Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (quoting 42 U.S.C. § 12111(8)). "Determining whether an individual is 'qualified' for a job is a two-step process." Reed v. Heil Co., 206 F.3d 1055, 1062 (11th Cir. 2000) (citing 29 C.F.R. pt. 1630.2(m) app. at 352-53 (2024)). "The first step is to determine if the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, [and] licenses." 29 C.F.R. pt. 1630.2(m) app. (2024). "The second step is to determine whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). "An employer is not required to provide a reasonable accommodation unless and until the employee makes a specific demand for an accommodation."

8

<u>Chancey v. Fairfield S. Co.</u>, 580 F. App'x 718, 720 (11th Cir. 2014) (citation omitted). At issue here is whether Plaintiff could perform the essential functions of the freight conductor position.

The freight conductor job description Defendant provided is evidence of the position's essential functions, which Plaintiff does not dispute, and Plaintiff did not request a reasonable accommodation. (Doc. 26-4, at 114-17); <u>see</u> <u>Chancey</u>, 580 F. App'x at 720. The job description states the freight conductor's primary responsibility is "to safely coordinate train crews on a freight train, place rail cars to facilitate loading and unloading, and makeup/breakdown trains in a rail yard, customer facility or similar locations." (Doc. 26-4, at 114.) Freight conductors must "[e]nsure compliance with all train orders, signals, railroad and safety rules and Federal Railroad Administration (FRA) regulations"; "safely perform all job responsibilities"; "[r]eceive and transmit information by radio and telephone"; "[m]aintain awareness of surrounding area and suspicious activity to ensure rail safety"; "[q]uickly and repeatedly make precise adjustments in moving the controls of a machine or vehicle to exact positions"; and "[r]eview instructions from dispatchers . . . and discuss with locomotive engineer." (<u>Id.</u>) Furthermore, freight conductors must "[r]ide on the outside of rail equipment for long periods of time"; "[u]nderstand oral and written communications";

9

"provide clear instructions/directions"; and employ "problem solving and troubleshooting skills." (Id.)

Plaintiff's VA medical records indicate his 70% PTSD disability rating became effective November 16, 2018. (Doc. 26-4, at 111.) The C.F.R. defines a 70% PTSD rating as

> Occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a worklike setting); inability to establish and maintain effective relationships.

38 C.F.R. § 4.130. Plaintiff's VA psychological screenings "indicated moderate to severe depression, anxiety and severe PTSD [symptoms]."[2] (Doc. 26-4, at 145.) His symptoms included "memory loss, . . . insomnia, periodic depression and . . . anxiety," "irritability and anger," "loss of focus/forgetfulness," "[d]ifficulty in understanding complex commands," "[d]ifficulty in establishing and maintaining effective work and social relationships," "[d]issociative reactions (e.g., flashbacks) in which [Plaintiff] feels or acts as if the traumatic event(s) were

---

[2] Though Plaintiff asserts his VA medical records are "immaterial" to his claim, the Court finds them highly relevant to whether Plaintiff was a qualified individual. (Doc. 29, at 8-9.)

10

recurring," and "[i]ntense or prolonged psychological distress at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event(s)."  (Id. at 144-45, 147.) Plaintiff offers no evidence to rebut his VA medical records beyond his own testimony that he is qualified for the position. (Doc. 29-2, at 5.)

Considering Defendant's job description and Plaintiff's VA medical records, the Court finds Plaintiff has not shown by a preponderance of the evidence that he was qualified to perform the freight conductor position. The PTSD symptoms for which Plaintiff is receiving VA disability benefits - including memory loss, loss of focus, difficulty understanding complex commands, and dissociative flashbacks - would render Plaintiff unable to reliably and safely perform the freight conductor duties, which require quick reactions, vigilance, and comprehending and sharing information in a highly safety-sensitive environment. (Doc. 26-4, at 114-17, 144-45, 147.) Furthermore, by continuing to receive a monthly payment for his 70% PTSD disability, Plaintiff represents he suffers from the same symptoms he exhibited when he was originally assessed. (Doc. 29-3, at 6.) In sum, because the PTSD symptoms noted in Plaintiff's VA records would interfere with his performance of the freight conductor position's essential functions, and since Plaintiff points to no evidence beyond his own testimony to show he can nevertheless perform those essential

11

functions, Plaintiff has not set forth evidence he is a qualified individual under the ADA. Therefore, the Court **GRANTS** Defendant's motion for summary judgment (Doc. 26).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 26) and Plaintiff's motion for extension of time (Doc. 28) are **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all pending motions, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 15th day of August, 2025.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA